UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

_____

**UNITED STATES OF AMERICA**

      **v.**         Case No. **21-cr-40081-HLT**

**GREGORY MYRON SEELEY,**
         Defendant.
_____

**DEFENDANT'S MEMORANDUM OF LAW
REGARDING ELIGIBILITY FOR APPOINTMENT OF COUNSEL**
_____

During the initial appearance, the Court set a status conference to review Mr. Seeley's finances to determine his eligibility for appointment of counsel. This status conference is set for Thursday, September 16, 2021 at 1:30 pm. Regarding this inquiry, Mr. Seeley respectfully submits this memorandum of law to set forth the legal framework for why and how he qualifies for court-appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A. Additionally, and for reasons set forth below, we ask the Court to conduct the factual inquiry ex parte, to the greatest extent practicable, to protect Mr. Seeley's Fifth Amendment right against self-incrimination whilst he seeks to invoke his Sixth Amendment right to counsel.

## BACKGROUND

Mr. Seeley is charged with two counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), and one count of possession of a firearm by a prohibited person – unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). The charges allege offenses that spring from evidence gathered the first

week of July 2021.

As set forth in the penalties page of the indictment, Counts 1 and 2 carry significant financial penalties upon conviction. These may include: a child pornography assessment not to exceed $17,000, as required by 18 U.S.C. § 2259A(a)(1); a Justice for Victims of Trafficking Act assessment of $5,000, as required by 18 U.S.C. § 3014(a)(3); and a special assessment of $100.00 per count of conviction (may apply to all three counts), as required by 18 U.S.C. § 3013(a)(2)(A). In addition to a possible forfeiture judgment, if convicted Mr. Seeley would also be subject to a mandatory restitution order as part of the judgment, as required by 18 U.S.C. § 2559(a).

Prior to his initial appearance, Mr. Seeley interviewed with pretrial services, which included an interview of his financial status. This interview was documented in a financial affidavit (Doc. 5) that was filed (Under Seal) in the record of this case. Undersigned counsel was appointed to represent Mr. Seeley in this case, pending the outcome of the status conference to further review his finances and eligibility for court-appointed counsel.

## LEGAL AUTHORITIES

Following the Supreme Court's landmark decision in *Gideon v. Wainwright*, 372 U.S. 335 (1963), Congress passed the Criminal Justice Act (CJA) in 1964 "to insure effective representation for those charged with a crime or confronted with the risk of being deprived of constitutional rights in ancillary proceedings." *United States v. Gonzales*, 150 F.3d 1246, 1258 (10th Cir. 1998). Section 3006A states: "[e]ach

United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation in accordance with this section." 18 U.S.C. § 3006A(a). A court shall appoint counsel to represent the defendant if it is "satisfied after appropriate inquiry that the person is financially unable to obtain counsel." 18 U.S.C. § 3006A(b).

"Appropriate inquiry necessarily varies with the circumstances presented, and no one method or combination of methods is required. Investigation of the applicant's assets, liabilities, income and obligations alone may constitute sufficient inquiry." *United States v. Barcelon*, 833 F.2d 894, 897 (10th Cir. 1987) (footnote and citations omitted). "A court may also consider the needs of the defendant and (his) family; the amount the defendant posted as bail; amounts given the defendant by others for limited purposes only; whether the defendant has secreted assets; and the availability of income to the defendant from other sources such as a spouse, or trusts, estates or the like. *United States v. Gutierrez*, 347 F. Supp. 3d 720, 733 (D.N.M. 2018) (citations omitted). In addition to these factors the court may also refuse to appoint counsel if it finds that the defendant's portrayal of financial inability lacks credibility. *See id at 733-34 (*citing *United States v. Binder*, 794 F.2d 1195, 1202 (7th Cir. 1986), *cert. denied*, 479 U.S. 869 (1986); *see also United States v. Bayer*, 1989 WL 31017, at \*1 (N.D. Ill. March 28, 1989) (Rovner, J.) (stating that, in analyzing whether the defendant has met his burden of demonstrating financial inability, courts consider the defendant's assets, liabilities, income, expenses, the defendant's needs,

his family's needs, "the potential cost of the defendant's representation, funds given to the defendant by others for limited purposes only, the existence of hidden assets, availability to the defendant of income earned by a spouse or ... other source, and the credibility of the defendant's representations as to his financial affairs.") (citations omitted).

As mentioned above, the CJA requires each district to put in place a plan for the appointment of counsel in criminal cases. Rule CR44.1 ("Rule") is the plan for the District of Kansas (effective July 19, 2021). Rule CR44.1 specifically references the CJA and the Guide to Judiciary Policy (Guide), Volume 7A. The Rule commands that, "[r]epresentation must be provided for any financially eligible person who is charged with a felony," such as Mr. Seeley. *Id*. at VI(A)(1)(a).

The Judiciary Guide defines "financial eligibility" under 18 U.S.C. § 3006A "if the person's net financial resources and income are insufficient to obtain qualified counsel." Guide at § 210.40.30. The Local Rule then mirrors mostly of the policy provisions of the Guide.

The Rule likewise sets for the procedures for determining financial eligibility. We highlight the duties and role of the U.S. Attorney's Office in this inquiry, or lack thereof. The Rule states, "[e]mployees of the United States Attorney's Office should not participate in completion of the financial affidavit or seek to obtain information concerning the financial eligibility from a person requesting the appointment of counsel." *Id*. at VI(B)(1)(b)(iii); *see also* Guide at § 210.40.20(e). Although the Guide, but not the Rule, does allow for the prosecution to present to the Court some

information concerning a person's eligibility, but only under limited circumstances. *See* Guide at § 210.40.20(g).

Finally, the Rule provides guidance to this Court about how to make the factual determination regarding financial eligibility for the appointment of counsel at no expense to the defendant. The Rule says that "consideration should be given to the cost of providing the person and his or her dependents with the necessities of life, the cost of securing pretrial release, asset encumbrance, and the likely cost to retain counsel." *Id.* at VI(B)(2)(c). "The initial determination of eligibility must be made without regard to the financial ability of the person's family to retain counsel unless their family indicates a willingness and ability to do so promptly." *Id.* at VI(B)(2)(d). The Rule also counsels that, "[a]ny doubts about a person's financial eligibility should be resolved n the person's favor; erroneous determinations of eligibility may be corrected at a later time." *Id.* at VI(B)(2)(e).

## ANALYSIS

Applying the standard above, we are confident that Mr. Seeley is "financially unable to obtain counsel," or, stated differently, is "financially eligible" to have counsel appointed to represent him in this felony case. At the hearing, we intend to present additional facts, evidence, and argument to support this position.

Although not a survey of cases, here are two examples of financial circumstances where the Court made opposite findings regarding financial eligibility. In *United States v. Bryant*, the Court concluded that the defendant financially qualified for appointment of CJA counsel. It found, "[a]lthough he has approximately

5

$226,000.00 in assets, he also owes $246,268.14 on his home and has other debts totaling over $35,000.00. His monthly income is $297.00. The Court concludes that Bryant qualifies for CJA, because of his negative net assets and his low income." *United States v. Bryant*, No. CR 18-3490 JB, 2020 WL 670993, at *8 (D.N.M. Feb. 11, 2020).

In contrast, in *United States v. Gutierrez*, the Court concluded the defendant was not financially qualified for appointment of CJA counsel. The Gutierrez court found, "[h]e has about $800,000.00 in assets in an annuity. He has few living expenses and almost no debt. The amount the United States is seeking in restitution is a fraction of that annuity, and the projected cost of a trial attorney is also less than the annuity's value. Because of those significant net assets and a calculation that he can pay for restitution and for an attorney and still have some assets remaining, the Court concludes that Gutierrez does not qualify for CJA." *United States v. Gutierrez*, 347 F. Supp. 3d 720, 736–37 (D.N.M. 2018).

Finally, we also highlight to the Court the tension this inquiry raises between Mr. Seeley's right to counsel under the Sixth Amendment and his right against self-incrimination under the Fifth Amendment. "The disclosure of financial information under the CJA to establish eligibility for appointed counsel has raised the issue of possible tensions between the Sixth Amendment right to counsel and the Fifth Amendment right against self-incrimination." *United States v. Sandoval*, No. CR 09-3456 JB, 2010 WL 4338061, at *6 (D.N.M. Oct. 4, 2010) (citing *United States v. Hardwell,* 80 F.3d 1471, 1483–84 (10th Cir. 1996)).

Although Mr. Seeley is not charged with financial crimes, his financial situation has investigatory interest to the United States. That is why the government filed a Motion for Pre-Sentence Payment of Criminal Penalties on September 14, 2021. *See* Doc. 12. The government is already aware of a large part of Mr. Seeley's financial situation, as set forth in the motion mentioned above. However, this awareness does not fully abrogate Mr. Seeley's concerns about having to put forward his full financial picture to the government solely to effectuate his constitutional rights.

As the Rule and Guide set forth above, the U.S. Attorney's Office was to have no role in the gathering of the financial affidavit that was completed in this case. With good reason, as the Court's factual determination regarding financial eligibility should be made without interference or fear, however slight, that the government will use this information against him in this criminal case. Also, significant here is that the government did not request an adversarial hearing on this inquiry – it was set sua sponte by the Court. For these reasons, we ask the Court to conduct the factual inquiry in an ex parte manner, to the greatest extent practicable. Holding this hearing ex pare is the best way to protect Mr. Seeley's Fifth Amendment right against self-incrimination whilst he seeks to invoke his Sixth Amendment right to counsel.

s/ Rich Federico
Rich Federico, #22111
Assistant Federal Public Defender
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Email: rich_federico@fd.org

## CERTIFICATE OF SERVICE

      I hereby certify that on September 15, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all interested parties.

s/ Rich Federico
Rich Federico, #22111

8