# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
             PLAINTIFF,

vs.                                        CASE NO. 21-CR-40081-HLT

GREGORY MYRON SEELEY,
             DEFENDANT.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (Doc. 26)

**APPEARS NOW** the United States of America, by and through Duston Slinkard, United States Attorney for the District of Kansas, and Sara L. Walton, Assistant United States Attorney for said District, in response and opposition to the defendant's Motion to Suppress Illegally Seized Evidence, submit the following:

### I.      THE DEFENDANT'S MOTION

The defendant moves this Court to suppress evidence located on the defendant's phone, the content found on the defendant's other electronic devices, firearms and marijuana seized during the search of the defendant's home and the defendant's statements to law enforcement.  The defendant argues that Federal Bureau of Investigations (FBI) Task Force Office Justin Broxterman (TFO

1

Broxterman) conducted a warrantless search of the defendant's phone, that the search did not fall within a recognized exception to the warrant requirement and that all subsequent evidence must be suppressed as fruit of the poisonous tree.

## II.   <u>STANDARD OF REVIEW</u>

The defendant bears the burden of showing that his Fourth Amendment rights are in fact implicated, while the government must demonstrate that its actions were justified. When addressing the defendant's motion to suppress, this Court must assess the credibility of witnesses and determine the weight to give to the evidence presented; and, the inferences this Court draws from that evidence and testimony are entirely within its discretion. *United States v. Goebel*, 959 F.3d 1259, 1265 (10th Cir. 2020); *United States v. Cortez*, 965 F.3d 827, 833 n.4 (10th Cir. 2020).

## III.   <u>FACTUAL STATEMENT</u>

On the morning of July 1, 2021, Gregory Myron Seeley, the defendant, purchased groceries at the Hy-Vee grocery store located at 2951 SW Wanamaker, Topeka, Kansas. After completing his purchase at register nine (9), the defendant left his cellular phone on the counter of the register and left the store. The cashier at register nine, Heather Jackson, realized the defendant left his Motorola phone and attempted to return it. However, Jackson was unable to find the defendant. Jackson looked at the phone for the owner's contact information. The phone was unlocked and displayed the home screen for the phone. On the phone's home screen was an image of a naked, pre-pubescent female. Jackson noted that the female was

clearly under the age of 18.

Jackson immediately notified the store manager, Brittney Filmore, who informed store director, Steve Colbern, about the phone and Colbern called the Topeka Police Department. When Colbern received the phone, the phone did not have power and he connected the phone to a charger in his office. Before law enforcement arrived, the defendant contacted the store to locate his phone and provided his name and the phone number associated with the phone. Surveillance video captured the defendant in the store, leaving his phone at the register, driving away from the store in a black pickup truck with Kansas tag 665EIF and returning to the store to look for his phone.

TFO Broxterman and Topeka Police Department (TPD) Officer Michelle Mackey arrived at the store and contacted Colbern in Colbern's office. Colbern showed TFO Broxterman the defendant's phone. When Colbern handed TFO Broxterman the phone, the phone was unlocked and displayed the home screen for the phone. TFO Broxterman observed the image on the home screen was a naked female with her vagina and breasts exposed. TFO Broxterman noted the female clearly appeared under the age of 18 and the image constituted child sexual abuse material (CSAM), commonly referred to as child pornography. TFO Broxterman placed the phone in airplane mode but did not conduct further review of the phone.[1]

---

[1] Most cell phones have a setting known as airplane mode that turns off the phone's ability to send or receive radio communications but preserves all information stored locally on the device. Placing a phone in airplane mode requires the agent to access the phones settings.

Officer Mackey took possession of the phone and on July 2, 2021, TPD Detective Sarah Friedrichs applied for a search warrant and Shawnee County Kansas District Court Judge Penny Moylan authorized the search. TPD Detective Patrick Ladd executed the search warrant and located over 1000 photos and videos containing additional stored on the phone. The location information associated with some of the images returned to the defendant's residence.

On July 5, 2021, Detective Friedrichs applied for a second search warrant to search the defendant's residence. Law enforcement entered and the residence and observed a large television connected to a laptop. Images of CSAM were actively displayed on the television. Law enforcement seized multiple electronic devices. Law enforcement also located multiple firearms and evidence of narcotics use. Based on those observations, law enforcement obtained an amended search warrant for the firearms and narcotics and seized 31 firearms, narcotics and paraphernalia.

Detective Friedrichs interviewed the defendant while other investigators executed the search warrant. Detective Friedrichs provided the defendant his Miranda warnings and the defendant waived his right to remain silent and spoke with the detective. The defendant admitted he left his phone at Hy-Vee. He admitted he downloaded CSAM from the internet and began viewing CSAM approximately two years ago. The defendant also acknowledged he was a daily user of marijuana.

IV.   **ARGUMENT**

### A.   **TFO Broxterman's seizure of the phone was justified under the plain view exception.**

TFO Broxterman did not manipulate the phone to view the image of CSAM on his home screen.  The CSAM image was in plain view when Colbern handed the phone to TFO Broxterman.  Therefore, TFO Broxterman did not search the phone and his seizure of the phone was justified under the plain view exception.

The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967).  One of the exceptions includes the plain view doctrine. *Coolidge v. New Hampshire*, 403 U.S. 443 (1971).  The plain view doctrine generally permits an officer to seize an incriminating item in "plain view" as long as he has "not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made." *Kentucky v. King*, 563 U.S. 452, 463 (2011).

An officer may seize evidence of a crime without a warrant if three conditions are met: (1) the seizing officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the item

must not only be in plain sight, but its incriminating character must also be immediately apparent; and (3) the officer must have a lawful right of access to the object. *United States v. Naugle,* 997 F.2d 819, 822 (10th Cir.1993).

The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures. A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The plain view doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable but this characterization overlooks the important difference between searches and seizures. If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. *Arizona v. Hicks*, 480 U.S. 321, 325 (1987); *Illinois v. Andreas*, 463 U.S. 765, 771 (1983). A seizure of the article, however, would obviously invade the owner's possessory interest. *Maryland v. Macon*, 472 U.S. 463, 469, (1985); *Jacobsen*, 466 U.S., at 113. If plain view justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches.

The 10th Circuit addressed a similar seizure in *United States v. Benoit*, 713 F.3d 1 (10th Cir. 2013). In *Benoit*, Benoit and his girlfriend, Rose DeGraffenreid, lived together in a home DeGraffendreid rented. DeGraffendreid was using Benoit's computer to pay bills and found what she believed was CSAM on the

6

computer.  DeGraffendreid notified the police and Officer Mark Moore responded to the residence.  When Officer Moore arrived, DeGraffendreid and her relative, Nicole Kidd, were present. Kidd offered to show Officer Moore the suspected CSAM on the computer in an office of the residence.  Kidd "clicked" on the icon and opened the video.  Kidd offered to show Officer Moore additional files but he said that was not necessary.  Officer Moore contacted his agency's cybercrimes unit and per their direction, seized the computer.  Investigators obtained a search warrant authorizing a full search of Benoit's computer and located approximately 320 images and 80 videos of CSAM.  Benoit challenged the inspection and seizure of his computer, arguing that it violated his Fourth Amendment rights. *Id*. at 9.

The 10th Circuit concluded that "Officer Moore, 'did nothing more than reach out to' seize the contraband. His seizure of the computer was justified under the plain view doctrine." *Id*. at 12.  The Court held the three conditions for the plain view exception were met.  First, the Court held, "with respect to the first prong, it is clear that DeGraffenreid had actual authority to invite Moore into her shared home and into the shared office. DeGraffenreid had both "mutual use of the property by virtue of joint access" and "control for most purposes" over the office as the renter of the shared home." *Id*. at 11.

Regarding the second prong, Officer Moore was in a "place from which the evidence could be plainly viewed. (Internal citations omitted). Furthermore, the incriminating character of the child pornography was immediately apparent. Accordingly, "upon viewing the object, the officer ... at that moment ha[d] probable

cause to believe the object to be contraband." *United States v. Tucker*, 305 F.3d 1193, 1202–03 (10th Cir.2002).  Moore testified that the video showed a minor female having sex with an adult male and that there was no doubt in his mind that the video depicted child pornography. *Benoit*, 713 F.3d at 13.

Lastly, regarding the third prong, the Court has stated that the lawful access factor "is implicated in situations such as when an officer on the street sees an object through the window of a house, or when officers make observations via aerial photography or long-range surveillance." *Naugle*, 997 F.2d at 823. Under those circumstances, "officers cannot use the plain view doctrine to justify a warrantless seizure, because to do so would require a warrantless entry upon private premises." *Id.* The Court held that was not the situation in *Benoit*. Officer Moore was invited into the residence by DeGraffenreid and was permitted to be in the office of residence, satisfying the third prong. *Benoit*, 713 F.3d at 11-12.

Likewise, TFO Broxterman was justified in his seizure of the defendant's phone pursuant to the plain view exception.  First, TFO Broxterman did not violate the Fourth Amendment by entering Hy-Vee. Once TFO Broxterman and Officer Macke arrived at the store, they were directed to Colbern's office.  Colbern, unquestionably, had actual authority to invite the officers into his office.  Second, the phone was in plain sight and the incriminating character of the image was immediately apparent.  The defendant's phone was connected to a phone charger in Colbern's office. Colbern handed TFO Broxterman the phone and the CSAM image was illuminated on the home screen.  TFO Broxterman did not manipulate the

phone to view the image.  When TFO Broxterman saw the image, he immediately recognized the image as CSAM.  Third, TFO Broxterman had a lawful right of access to the object.  The defendant left his phone in the store.  TFO Broxterman did not enter private property uninvited to access the phone, rather, it was the defendant's own actions that placed his phone within the lawful access of law enforcement. Once TFO Broxterman identified the phone as contraband, he placed the phone in airplane mode and did not search the phone until Judge Moylan authorized a search warrant for the contents of the phone and Detective Ladd completed a forensic download.

As in *Benoit*, TFO Broxterman did nothing more than identify the phone as containing contraband and reach out and seize the phone as evidence.  TFO Broxterman did not search the contents of the phone nor take any action to infringe on the defendant's privacy interest in the phone. TFO Broxterman's seizure of the phone was justified under the plain view exception and did not violate the Fourth Amendment.

### B. TFO Broxterman's initial review of the phone did not exceed the scope of the private search.

In the alternative, if the Court finds TFO Broxterman's actions constituted a search, TFO Broxterman did not exceed the scope of the private search, and therefore, did not violate the defendant's Fourth Amendment protections.

"The Fourth Amendment proscribes only government action; it is wholly inapplicable to search or seizure effected by a private individual not acting as an agent of the Government or with the participation of any government official."

*Walter v. United States*, 447 U.S. 649, 662 (1980).[2] Whether a private individual's actions were accidental or deliberate and whether they were reasonable or unreasonable, they cannot violate the Fourth Amendment because of their private character.  The additional invasion of privacy by a government agent must be tested by the degree to which the agent exceeded the scope of the private search. *United States v. Jacobsen*, 466 U.S. at 115.[3]

As the initial inquiry, the District Court must determine if the Hy-Vee employee was private individual and not acting as an agent of the Government. The Court has delineated a two-step inquiry to determine whether a search by a private individual constitutes state action: (1) did the government know of and acquiesce in the private person's intrusive conduct; and (2) did the party performing the search intend to assist law enforcement efforts or to further his own ends. *United States v. Poe*, 556 F.3d 1113, 1123 (10th Cir.2009). Law enforcement did not encourage, initiate, or instigate the actions of the Hy-Vee employee, Heather Jackson, when she attempted to find the owner of the phone. Jackson located the defendant's phone on the counter of the register. She attempted to return the phone to the

---

[2] In *Walters,* a private party opened a misdirected carton and found rolls of motion picture films that appeared to be contraband and turned the carton over to the FBI.  The FBI viewed the film using a projector without a warrant.  Although there was no majority opinion, four justices agreed that the FBI viewing the films on a projector did not change the nature of the search to necessitate a search warrant, as the private party had fully ascertained the nature of the films.

[3] In *Jacobsen*, an employee of Federal Express asked the officer manager to look at a package damaged by a forklift.  Employees opened and sorted through the package pursuant to company policy and located containers with white powder.  Employees notified the Drug Enforcement Administration.  Before agents arrived, the employees returned the items to the box. The DEA agents had to remove the containers from the box. Agents also field tested the white powder. Court held the Fourth Amendment did not require the agents to obtain a search warrant before removing items from the package or field testing the white powder.

defendant but the defendant left.  Jackson looked at the phone to find contact information and observed the CSAM image.  Jackson reported her findings to management who then contacted law enforcement. Jackson's intrusion, if any, into the defendant's privacy was as a private individual and not as a government actor and could not violate the Fourth Amendment.

If the Court concludes TFO Broxterman searched the defendant's phone, that search did not exceed the scope of Jackson's private search.  TFO Broxterman viewed the home screen on the defendant's unlocked phone and confirmed the image was CSAM and placed the phone in airplane mode.  TFO Broxterman did not search the contents of the phone. The Fourth Amendment does not require TFO Broxterman to obtain a search warrant before this limited review of the phone. TFO Broxterman's actions were reasonable and did not further invade the defendant's privacy interest in the phone.

## C. **TFO Broxterman's limited access to the phone was justified to prevent the destruction of evidence.**

TFO Broxterman took di minimis and reasonable steps to prevent the destruction of the contents of the defendant's phone when he accessed the phone and placed it in airplane mode.  TFO Broxterman did not search the contents of the defendant's phone when he accessed the settings to disable remote access and, therefore, did not violate the Fourth Amendment.

The defendant relies on *Riley v. California*, 573 U.S. 373 (2014) for his general premise that a warrantless search of the defendant's phone violated the Fourth Amendment.  However, the majority in *Riley* recognized that if officers

happen to seize a phone in an unlocked state, officers are permitted to take "reasonable steps to secure a phone to preserve evidence while they wait for a warrant." In fact, petitioner Riley conceded that officers could have seized and secured the cell phones to prevent destruction of evidence while seeking a warrant. *Id.* at 388-389. The steps officers may take require limited access on the device, including adjusting the phone settings, as long those steps are consistent with principles set forth in our decision in *Illinois v. McArthur*, 531 U.S. 326, 331-333 (2001). *Riley*, 573 U.S. at 391. In McArthur, the Court approved officers' reasonable steps to secure a scene to preserve evidence while they awaited a warrant. The Court held officers must: (1) have probable cause to believe the phone contains evidence or contraband; (2) avoid unnecessarily observing data stored on the phone; (3) expeditiously seek a warrant; and (4) be able to articulate a case-specific, non-pretextual reason to believe that evidence could have been encrypted or destroyed while a warrant was obtained.

It is possible that data on a cell phone may be destroyed or encrypted before a warrant can be obtained.[4] All major cell phone platforms allow users and their authorized delegates to remotely wipe a lost or stolen phone. *United States v. Flores-Lopez*, 670 F.3d 803, 808-09 (7th Cir. 2012). Even if a phone is not remotely wiped, digital information on the phone may be overwritten as new data is received. Many phones also automatically "lock" after a period of inactivity, encrypting the contents

---

[4] To remotely lock or delete all data from an Android phone, a user need only access Google's Find My Device website and select "Erase Device" and confirm account information. See *"Find, lock, or erase a lost Android device - Google Account Help"* https://support.google.com/accounts/answer/6160491.

and making it difficult (and often impossible) to recover original data from the device.  See *Riley*, 573 U.S. at 388.

Although the officer will usually need a warrant to search the phone, he need not avert his eyes if incriminating information is displayed on the phone's exterior screen or appears while the officer is lawfully attempting to place the phone in airplane mode or to disable the automatic locking feature. *United States v. Wurie*, 728 F.3d 1, 15 (1st Cir. 2013).  Absent exigent circumstances or consent, however, officers may not manipulate data or further interact with a phone to determine whether information observed in plain view is, in fact, incriminating. *Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987).

TFO Broxterman took di minimis steps to prevent the destruction of evidence from the defendant's phone.  First, when TFO Broxterman responded to the store, employees had already reported CSAM on the defendant's phone, which constituted probable cause to believe the phone contained contraband.  Second, TFO Broxterman accessed the phone's settings to place the phone in airplane mode and avoided unnecessarily observing additional content. TFO Broxterman did not exceed the limited purpose of securing the phone.  When TFO Broxterman accessed the phone, the CSAM image was displayed on the phone's home screen, TFO Broxterman did manipulate the phone or access files to locate the CSAM. TFO Broxterman was not required to advert his eyes from the image. Third, officers obtained a search warrant the next day.  Fourth, there was reason to believe evidence could be erased or destroyed. The defendant was aware his phone

was missing, as he contacted the store multiple times to locate it.  It is reasonable, given the content on the phone, the defendant would attempt to remotely lock or erase the contents of his phone.   TFO Broxterman's limited access into the defendant's phone did not require a search warrant, rather, simply prevented the destruction or loss of any contraband and related content stored on the phone until officers secured a warrant.

### D. <u>Inevitable discovery provides an exception to the exclusionary rule.</u>

Lastly, if this Court determines TFO Broxterman's conduct violated the Fourth Amendment, the inevitable discovery doctrine provides an exception to the exclusionary rule.  Investigators had probable cause, independent of TFO Broxterman's review of the home screen on the phone, to support a judge authorizing search a warrant for the defendant's phone and subsequent search warrant for his residence.

When a search violates the Fourth Amendment, the exclusionary rule normally dictates that evidence obtained as a result of that search be suppressed. *Nix v. Williams*, 467 U.S. 431, 442–43, (1984). The inevitable discovery doctrine provides an exception to the exclusionary rule. *Id.* at 444, 448; *United States v. Romero*, 692 F.2d 699, 704 (10th Cir.1982), and permits evidence to be admitted "if an independent, lawful police investigation inevitably would have discovered it." *United States v. Owens*, 782 F.2d 146, 152 (10th Cir.1986).

The inevitable discovery doctrine is based on the same rationale as the independent source doctrine—that "the interest of society in deterring unlawful

police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been if no police error or misconduct had occurred." *Nix*, 467 U.S. at 443. When the challenged evidence also has an independent source or would inevitably have been discovered by independent lawful means, exclusion of the evidence "would put the police in a worse position than they would have been in absent any error or violation." *Id.* Further, the doctrine applies whenever an independent investigation inevitably would have led to discovery of the evidence, whether or not the investigation was ongoing at the time of the illegal police conduct," *United States v. Larsen*, 127 F.3d 984, 986–87 (10th Cir.1997).

The government possesses the burden of proving by a preponderance of the evidence that the evidence at issue would have been discovered without the Fourth Amendment violation. *United States v. Souza*, 223 F.3d 1197, 1203 (10th Cir.2000). The district court must determine "how likely it is that a warrant would have been issued and that the evidence would have been found pursuant to the warrant." *Id.* at 1204.

The Tenth Circuit adopted the four factors from the Second Circuit to aid in this determination: (1) the extent to which the warrant process has been completed at the time those seeking the warrant learn of the search; (2) the strength of the showing of probable cause at the time the search occurred; (3) whether a warrant ultimately was obtained, albeit after the illegal entry; and (4) evidence that law enforcement agents 'jumped the gun' because they lacked confidence in their

showing of probable cause and wanted to force the issue by creating a fait accompli. *Id*.

Factors (1) and (3) are of particular importance. Ultimately, the court must examine each contingency that would need to have been resolved in favor of the government and apply the inevitable discovery doctrine "only when it has a high level of confidence" that the warrant would have been issued and the evidence obtained. *Id*. at 1204-1205.

First, investigators had not applied for a search warrant prior to TFO Broxterman responding to Hy-Vee. Second, at the time TFO Broxterman reviewed the phone, officers had ample probable cause that contraband was located on the phone and that the phone belonged to the defendant. The store employee, Heather Jackson, had already observed the CSAM image on the phone. The defendant returned to the store, looking for his phone and provided the number for the phone. Store surveillance captured the defendant leaving the store in a vehicle. Investigators obtained the Kansas tag information and confirmed it belonged to the defendant and his registered address. Third, investigators applied for a search warrant to search the phone and an independent magistrate authorized the search. After investigators executed the warrant on the phone, they obtained additional search warrants for the defendant's residence and vehicle. Fourth, TFO Broxterman did not "jump the gun" when he reviewed the phone, he was securing potential evidence for further investigation.

Absent TFO Broxterman confirming the image on the phone was CSAM, there was sufficient probable cause for the issuance of the search warrant of the phone.  Jackson had already described the image as a naked girl, clearly under the age of 18.  For example, if the phone was powered off and unable to charge, investigators could have, and would have, applied for a warrant based on Jackson's information alone. Investigators would not return the phone if they had a reasonable belief the phone contained CSAM.   It is very likely a judge would have authorized the warrant to confirm the content of the phone.  Once investigators searched the phone and located the additional CSAM, they would have applied for the additional warrants.  The additional warrants had sufficient probable cause to search the defendant's residence based on the CSAM located on the phone, absent TFO Broxterman's observation of the home screen.

## E.  **Defendant's reliance on *State v. Salazar*, 56 Kan.App.2d 410 (2018) is misplaced.**

The defendant acknowledges his lack of applicable federal precedent to support his argument and relies on a Kansas Court of Appeals case, *State v. Salazar*, 56 Kan.App.2d. 410 (2018), to support his contention that TFO Broxterman's warrantless search of the defendant's phone violated the Fourth Amendment and all subsequent evidence must be suppressed.  However, the defendant's reliance on *Salazar* is misplaced as *Salazar* is factually distinct from the case at hand.

In *Salazar*, officers responded to a fatality accident involving a van and a motorcycle.  The van struck the motorcycle from behind, killing the driver of the

17

motorcycle. The driver of the van, identified as Salazar, seemed hysterical while being evaluated by medical personnel and was unable to provide her full name to officers. Salazar told officers that her driver's license was in the van and gave officers permission to retrieve it. Officers looked in the van for the driver's license or other identifying information. One of the officers located a cell phone on the floor and picked it up. Although the evidence was inconclusive on whether the officer pressed a button on the phone or merely picked it up, a text conversation displayed on the phone. One of the other officers told the officer "I'd put that up" but the searching officer replied "I was just trying to see if she was texting." The other officer reached over and minimized the image and viewed a text message sent around the time of the accident. 56 Kan.App.2d at 413.

In *Salazar*, the Kansas Court of Appeals cited two federal district court opinions supporting the application of the plain view exception to information displayed on a cell phone screen without officer manipulation (internal citations omitted). Thus, the court reasoned, while it appears that the plain view doctrine would apply if the officer saw the text messages without manipulating Salazar's cell phone, the key issue here is whether the evidence supports such a finding. Based on the district court's holding that the search was illegal and rejection of plain view exception argument, the court held the district court's finding was supported by substantial competent evidence in the record. 56 Kan.App.2d at 418. Further, the Court in *Salazar* left open the question whether contents of the phone were admissible despite the initial violation. 56 Kan.App.2d at 428.

In the instant case, TFO Broxterman did not manipulate the defendant's phone to view the home screen. TFO Broxterman was acting on information from a private individual that the phone contained contraband. Unlike the officers in *Salazar*, TFO Broxterman did not exceed the scope of his consent to locate the phone and subsequently view the contents on the home screen. As previously argued, the evidence in this case supports the application of the plain view exception to TFO Broxterman's review of the image displayed on the phone's home screen.

## V.   <u>CONCLUSION</u>

TFO Broxterman did not violate the defendant's Fourth Amendment protections when he viewed the CSAM displayed on the home screen of the defendant's phone. The evidence supports the application of the plain view exception to the warrant requirement. TFO Broxterman did not manipulate the phone to view the CSAM. If the Court finds the plain view exception does not apply, any search of the phone was within the scope of the initial private search and was limited to the purpose of securing the phone from remote access and potential destruction of evidence. Furthermore, if the Court determines TFO Broxterman violated the Fourth Amendment, the inevitable discovery doctrine provides an exception to the exclusionary rule. There is a high likelihood that even if officers did not have the evidence from the initial view of the phone, they would have applied for and a judge would have authorized a search warrant for the phone.

**WHEREFORE** it is respectfully requested that the Court deny the

defendant's Motion to Suppress Illegally Seized Evidence.

Respectfully submitted,

DUSTON J. SLINKARD
United States Attorney
District of Kansas

By:     */s/ Sara L. Walton*

_____

Sara L. Walton, KS Bar No. 24106
Assistant United States Attorney
District of Kansas
290 Carlson Federal Building
444 SE Quincy Street
Topeka, KS 66683
Ph: 785.295.2850 (Office)
Fax: 785.295.2853
sara.walton@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this, I electronically filed the foregoing Response with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Nicholas David
The David Law Office LLC
123 W. 8th St., Ste. 301
Lawrence, KS 66044
nick@thedavidlawoffice.com

and

Branden Smith
Smith Legal LLC
719 Massachusetts Street, Ste. 126
Lawrence, KS 66044
branden@smithlegalllc.com

By: /s/ Sara L. Walton
Sara L. Walton, KS Bar No. 24106
Assistant United States Attorney