IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>GREGORY MYRON SEELEY,<br><br>      Defendant. | Case No. 5:21-cr-40081-HLT |

**ORDER**

This case stems from an image of a nude underage female on the home screen of a cellphone that Defendant left at the checkout counter of a Hy-Vee grocery store. Hy-Vee reported the image to law enforcement after an employee saw the image. Law enforcement saw the image and got a search warrant. A grand jury later indicted Defendant for possession of child pornography and possession of a firearm by a prohibited person. Defendant now moves to suppress all evidence. Doc. 26.

The motion raises a straightforward factual dispute: was the image of the nude underage female displayed when the employee handed the cellphone to the officer? Defendant contends that it was not displayed, so the officer conducted an unconstitutional search when he manipulated the cellphone to display the image. He argues all evidence flowing from that violation must be suppressed. The government contends the image was displayed in plain view, so there was no constitutional violation. The Court agrees with the government and denies the motion.

**I.    BACKGROUND**

    **A.    Defendant's Cellphone (Gov't Ex. 2)**

Defendant's cellphone is a touchscreen Motorola that uses the Android operating system. It does not have any security features enabled such as a passcode, a password, or biometrics. Thus,

the cellphone's home screen can be accessed by anybody. The home screen contains a few application-shortcut keys, and the home-screen background is an image of a nude underage female with her breasts and vagina exposed.

If the cellphone is powered off, the home screen cannot be displayed until the cellphone is powered up. This happens by pressing the power button, which is on the side of the cellphone. Once pressed, the cellphone begins to power up. It will briefly display a blue screen with the Motorola and Android symbols and will then automatically display the home screen, which shows the image of the female in the background and the application-shortcut keys on the side. The entire power-up process takes about 30 seconds.

If the cellphone is powered on, it will display the home screen unless the cellphone is powered down or enters "sleep mode." The cellphone enters sleep mode either when someone taps the power button or when the cellphone has been idle for a sufficient time. It is not clear how long the cellphone must be idle before it enters sleep mode. But the video of Defendant checking out lasted about two minutes and the screen was displayed the entire time, which suggests that the idle time for his cellphone is at least two minutes. *See* Gov't Ex. 1. The cellphone "wakes up" and displays the home screen when the cellphone is raised, when the screen is touched and swiped, or when the power button is pressed.

### B. Events at Hy-Vee on July 1, 2021

Defendant bought groceries at a Hy-Vee grocery store in Topeka, Kansas, on July 1, 2021. He placed his cellphone on the checkout counter while paying for his groceries. He took his groceries and exited the store. But he left his cellphone on the counter.

A Hy-Vee employee found Defendant's cellphone and eventually saw the image of the nude underage female on the home screen. Steven Colbern (the Hy-Vee store director) was

notified. He asked for law enforcement to be notified and put the cellphone in his office and connected it to a charger.

Topeka Police Department ("TPD") Detective/FBI Task Force Officer Justin Broxterman and TPD Officer Michelle Mackey responded to Hy-Vee. They arrived around the same time and went to Colbern's office together, which was about 10 feet by 10 feet in size. They entered the office and stood about 5 or 6 feet away from Colbern. Colbern told them that the cellphone was on his desk, picked it up, and handed the cellphone to Broxterman. Broxterman saw the image and put the cellphone into airplane mode by swiping down from the top of the home screen and touching the airplane icon. Broxterman then handed the cellphone to Mackey, and she secured the cellphone as evidence.

Other TPD detectives later applied for and received a search warrant for the cellphone and for Defendant's house. Officers located child pornography, multiple firearms, and a controlled substance. A federal grand jury indicted Defendant for possession of child pornography and possession of a firearm by a prohibited person. Defendant now moves to suppress the child pornography, firearms, and other evidence.

## II.    ANALYSIS

Defendant contends law enforcement violated his Fourth Amendment rights by conducting a warrantless search of his cellphone. The Fourth Amendment protects people from "unreasonable searches and seizures" of "their persons, houses, papers, and effects." U.S. Const. amend. IV. The Fourth Amendment applies to cellphones. *Riley v. California*, 573 U.S. 373, 386 (2014). The default rule under the Fourth Amendment is that warrantless searches or seizures are unreasonable unless an exception applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971). Plain view is an exception to the warrant requirement and applies when three conditions are met: (1) the

3

officer was lawfully able to view the object, (2) the object's incriminating nature was immediately apparent, and (3) the officer had a lawful right of access to the object. *United States v. Carey*, 172 F.3d 1268, 1272 (10th Cir. 1999).

The parties agree on this law but dispute whether the image of the nude underage female was displayed and in plain view. Defendant contends the image was not displayed and that Broxterman conducted an unconstitutional search by manipulating the cellphone to display the image.[1] The government disagrees and argues that the image was displayed and in plain view when Colbern handed the cellphone to Broxterman. Defendant's motion thus raises a single factual issue: was the image of the nude underage female displayed when Colbern handed the cellphone to Broxterman? The Court answers this dispositive question in the affirmative. The Court finds that the image <u>was displayed and in plain view</u> when Colbern handed the cellphone to Broxterman.

Broxterman testified that the cellphone was connected to a charger[2] when he arrived in Colbern's office. He testified that Colbern removed it from the charger and handed it to him with the image displayed. Broxterman testified that he immediately recognized the displayed image as child pornography, that he did not direct Colbern to manipulate the cellphone to display the image, and that he did not manipulate the cellphone to display the image. Broxterman testified that he put the cellphone in airplane mode after it was handed to him to disconnect it from the network and then handed the cellphone to Mackey.[3]

---

[1] *See* Doc. 26 at 6 (arguing that Broxterman conducted a warrantless search because "the contents of [Defendant's] phone were not in plain view because Broxterman could only see the phone's contents by pressing the unlock button to turn on the screen displaying a background image"); *id.* at 7 (explaining Broxterman conducted an unconstitutional search because he "viewed the background image on [Defendant's] phone prior to obtaining a search warrant").

[2] The parties dispute whether Colbern connected the cellphone to a wired charger or a wireless charger. The Court does not resolve this factual dispute as it does not impact resolution of this motion.

[3] Defendant does not challenge Broxterman putting the cellphone in airplane mode. *See, e.g.*, *United States v. Cain*, 2017 WL 1507422, at *5 (D. Me. 2017) (holding that placing cellphone in airplane mode was a reasonable

Mackey's testimony corroborates Broxterman's testimony on this critical issue. Mackey testified that Colbern took the cellphone off the charger and handed it to Broxterman with the image of the nude underage female displayed. She also confirmed that Broxterman did not manipulate the cellphone to display the image.

The Court fully credits the testimony of Broxterman[4] and Mackey on this factual issue and finds that the image of the nude underage female was displayed when Colbern handed the cellphone to Broxterman. Broxterman did not manipulate the cellphone to display the image. The Court also credits their testimony about Broxterman not directing Colbern to take any actions to display the image. The Court finds that Broxterman did not direct Colbern to manipulate the cellphone to display the image.

Defendant tries to avoid this outcome by pointing to Kimberly Bottom's testimony about her interview with Colbern. Bottom is an investigator. She testified that she interviewed Colbern in November 2021 and that Colbern told her during the interview that he handed the cellphone to Broxterman and that Broxterman then unlocked it and went through the cellphone. But her testimony does not result in a different outcome or meaningfully undermine the testimony of Broxterman and Mackey. First, Bottom did interview Colbern in November 2021. But this interview caught Colbern off-guard and occurred after he had brain surgery to remove a tumor that impacted his memory. This is highlighted by the fact that he responded to at least eight questions during the interview with "I don't remember." Second, Bottom's testimony about this interview is

---

measure to prevent the destruction of evidence and no more intrusive than measures the Supreme Court described as reasonable in *Riley*).

[4] The Court finds Broxterman to be a particularly credible witness. The Court observed him during questioning. He was attentive. He conceded points not helpful to the government's case. He was knowledgeable. And his testimony was logical and consistent with the other evidence. The Court credits his testimony.

5

undercut by Colbern's courtroom testimony when he testified that to the best of his memory the image popped up when he handed the cellphone to Broxterman.

Defendant also argues that Mackey's testimony suggests that Broxterman manipulated the cellphone to display the image. Defendant notes that Mackey testified that she did not see Colbern turn on the cellphone, that she did not see a blue screen, and that Colbern took the cellphone off the charger and handed it to Broxterman (implying he did not hold it long enough for the cellphone to power up). But this testimony does not contradict Broxterman on the key factual issues. The cellphone displays the blue screen for only a couple of seconds before transitioning to the home screen. Mackey could have missed seeing the blue screen because she was not looking at the cellphone or because the cellphone was angled away from her in that brief window of time. Or it is possible that Broxterman could have been mistaken in his belief that Colbern powered up the cellphone. It is possible that the cellphone was in sleep mode when Colbern disconnected it from the charger and pressed the power button, which would cause the home screen to immediately display without going through the power-up process that briefly displays the blue screen.

The critical point for this motion is that Broxterman, Mackey, and Colbern (to the best of his memory) credibly testified that the image of the nude underage female was displayed when Colbern handed the cellphone to Broxterman. The Court finds that the image was displayed when Colbern handed the cellphone to Broxterman, that Broxterman did not direct Colbern to manipulate the cellphone to display the image,[5] and that the image was in plain view when Colbern handed the cellphone to Broxterman in his office. A constitutional violation did not occur, and the

---

[5] Although not argued by Defendant, the Court notes that the Fourth Amendment only guards against unreasonable searches and seizures by state actors and not against searches and seizures by private individuals. *United States v. Poe*, 556 F.3d 1113, 1123 (10th Cir. 2009). A private search may be transformed if the government coerces, dominates, or directs the action. But there is no evidence in this case suggesting that Broxterman coerced, dominated, or directed Colbern to manipulate the cellphone to display the image. The Court finds that Broxterman did not take such actions.

6

motion to suppress is denied. *See Commonwealth v. Alvarez*, 105 N.E.3d 237, 239 (Mass. 2018) (holding that a search had not occurred when the officer glanced at the defendant's cellphone and observed a text message displayed on the screen, and when there was no evidence that the officer opened the cellphone, manipulated it to view the text message, or otherwise perused its contents); *United States v. Gomez*, 807 F. Supp. 2d 1134, 1141 (S.D. Fla. 2011) (finding information automatically displayed on cellphone by caller identification function admissible under the plain view exception after phone was lawfully seized by law enforcement).[6]

## III. CONCLUSION

The Court carefully considered the record and arguments. The Court finds that the image of the nude underage female was displayed when Colbern handed the cellphone to Broxterman. The Court also finds that Broxterman did not direct Colbern to display the image or manipulate the cellphone. The Court thus finds law enforcement did not violate Defendant's Fourth Amendment rights.

THE COURT THEREFORE ORDERS that Defendant's Motion to Suppress (Doc. 26) is DENIED.

IT IS SO ORDERED.

Dated: March 15, 2022                    /s/ *Holly L. Teeter*
                                         HOLLY L. TEETER
                                         UNITED STATES DISTRICT JUDGE

---

[6] Even if TFO Broxterman had performed a search, the search was lawful because he did not exceed the scope of the private search. If the "results of the private search are turned over to the government, the government may not exceed the scope of the private search unless it has a right to conduct an independent search." *United States v. Stratton*, 229 F. Supp. 3d 1230, 1239 (D. Kan. 2017). Here, a Hy-Vee employee had already opened the cellphone and accessed the home screen to view the image, and there was no credible evidence presented that Broxterman exceeded that scope. *See id.* at 1240 (holding that the government did not exceed the scope of a private search when the defendant sent images of child pornography in an online message on a network operated by Sony, which were viewed by a Sony employee, who sent a screenshot of the message and images in a report to government investigators).